UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____
UNITED STATES OF AMERICA

              -against-

ANDRE BARNABY, et al.,

                       Defendants.
_____

**MEMORANDUM & ORDER**
**18-CR-33 (S-2) (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

This is a criminal prosecution charging Defendants with racketeering, violations of the Hobbs Act, and unlawful use or possession of firearms. Pending before the court are motions to dismiss four firearm-related charges predicated on attempted Hobbs Act robbery, after the Second Circuit vacated and remanded this court's prior decision dismissing those counts from the indictment. *See United States v. Cheese*, 849 Fed. App'x 19, 20 (2d Cir. 2021). Also pending are motions to dismiss one firearm-related charge predicated on racketeering; motions to dismiss four counts of committing physical violence in furtherance of a plan to commit Hobbs Act robbery; a motion to dismiss one firearm-related charge predicated on Hobbs Act robbery; motions to sever; motions to suppress physical evidence, post-arrest statements, and cellphone data; and various discovery and disclosure motions.[1]

For the reasons stated below, the motions to dismiss the firearm-related counts are DENIED; the motions to dismiss the counts for committing physical violence under the Hobbs Act are GRANTED; the motions to suppress are DENIED; the motions for

---

[1] Additional pending motions have been mooted by guilty pleas.

a bill of particulars are DENIED; and motions to sever and to compel discovery are DENIED as premature with leave to renew.

## I.    BACKGROUND

The court assumes familiarity with the factual and procedural history of this case and summarizes that history only insofar as it is necessary to resolve the pending motions.

### A.    The Prior Indictments

On January 18, 2018, a grand jury in the Eastern District of New York returned a 3-count indictment (the "First Indictment") against three defendants. (First Indictment (Dkt. 17).) On July 11, 2019, the Government filed a 14-count superseding indictment (the "First Superseding Indictment") against 17 defendants. (First Superseding Indictment (Dkt. 71).) The First Superseding Indictment charged various combinations of defendants with racketeering, predicated on twelve underlying racketeering acts; Hobbs Act robbery; attempted Hobbs Act robbery; and firearm-related charges predicated on racketeering, attempted Hobbs Act robbery, and actual Hobbs Act robbery. (*See id.*)

### B.    The Prior Motions to Dismiss

On August 7, 2019, Defendant Constantin Cheese moved to dismiss one firearm count predicated on attempted Hobbs Act robbery from the First Superseding Indictment. (*See* Cheese Mot. to Dismiss (Dkt. 189).) Four other defendants joined his motion, challenging the same charges against them. On February 12, 2020, this court dismissed those counts on the grounds that attempted Hobbs Act robbery is not a predicate "crime of violence" for 18 U.S.C. § 924(c) liability under the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). *See United States v. Cheese*, No. 18-cr-33-2 (NGG), 2020 WL 705217 (E.D.N.Y. Feb. 12, 2020). The Government appealed. On June 7,

2

2021, the Second Circuit vacated this court's order and re-manded for further proceedings, consistent with its recent holding in *United States v. McCoy*, 995 F.3d 32, 55 (2d Cir. 2021). *See Cheese*, 849 Fed. App'x at 20.

### C. The Second Superseding Indictment

While the appeal was pending, the Government filed the opera-tive 20-count second superseding indictment (the "Second Superseding Indictment"). (Second Superseding Indictment (Dkt. 373).) In the Second Superseding Indictment, the Govern-ment reasserts the charges from the preceding indictment and asserts six new charges, including four added counts for commit-ting physical violence in furtherance of a plan to commit Hobbs Act robbery. (*See id.*)

The Second Superseding Indictment alleges that Defendants are members of the Makk Balla Brims, a set of the Bloods gang based in the South Jamaica neighborhood of Queens, New York, who participated, in various combinations, in a series of related actual and attempted robberies between May and December 2017. The alleged events are summarized below:

- May 3: Robbery of jewelry and currency from an individ-ual, Jane Doe #1 (*id.* ¶ 11);

- September 7: Robbery of a drug-trafficking business in South Jamaica, NY (*id.* ¶¶ 13-14);

- September 23: Robbery of a barber shop in Jamaica, NY (*id.* ¶¶ 16-17);

- September 29: Robbery of a narcotics trafficking business in Elmont, NY (*id.* ¶¶ 19-20)[2];

- October 3: Robbery of a narcotics trafficking business in Hempstead, NY (*id.* ¶¶ 22-23);

- October 4: Robbery of jewelry and currency from an individual, Jane Doe #2 (*id.* ¶ 24);

- October 11: Robbery of employees of a jewelry business in Queens, NY (*id.* ¶¶ 26-27);

- October 16: Attempted robbery of a narcotics trafficking business in Port Washington, NY (*id.* ¶¶ 29-30);

- October 28: Robbery of jewelry and currency from one or more individuals (*id.* ¶ 31);

- November 14: Attempted robbery of an auto body shop business in Flushing, NY (*id.* ¶¶ 33-34);

- November 18: Robbery of jewelry and electronic devices from one or more individuals (*id.* ¶ 35);

---

[2] The defendants associated with the September 29, October 11, and November 14 allegations were charged with robbery under state law and attempted robbery under the Hobbs Act as predicate racketeering acts.

4

- November 19: Attempted robbery of jewelry and currency from one or more individuals (*id.* ¶ 36);

- December 5: Robbery of jewelry from one or more individuals (*id.* ¶ 37).

In connection with the allegations, various combinations of defendants are charged with racketeering (Count One) (*id.* ¶¶ 8-9); unlawful use of firearms in furtherance of racketeering (Count Two) (*id.* ¶ 38); Hobbs Act robbery (Counts Three, Five, and Ten) (*id.* ¶¶ 39, 41, 46); unlawful use of firearms in furtherance of Hobbs Act robbery (Counts Four, Six, and Eleven) (*id.* ¶¶ 40, 42, 47); attempted Hobbs Act robbery (Counts Seven, Twelve, Fifteen, and Eighteen) (*id.* ¶¶ 43, 48, 51, 54); committing physical violence in furtherance of a plan to commit Hobbs Act robbery (Counts Eight, Thirteen, Sixteen, and Nineteen) (*id.* ¶¶ 44, 49, 52, 55); and unlawful use of firearms in furtherance of the attempted Hobbs Act robbery counts and the committing physical violence under the Hobbs Act counts (Counts Nine, Fourteen, Seventeen, and Twenty) (*id.* ¶¶ 45, 50, 53, 56).

## II.  DEFENDANTS' MOTIONS TO DISMISS THE FIREARM COUNT PREDICATED ON THE RACKETEERING CHARGE

Defendants Brandon Darby, Antonio Davis, Avery Mitchell, Nahjuan Perry, James Roberson, and Shamel Simpkins (the "Racketeering Defendants") move to dismiss Count Two of the Second Superseding Indictment, which charges them with the unlawful use of firearms in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). They argue that racketeering, as it is alleged here, is not a crime of violence under the statute. (Darby Mot. to Dismiss (Dkt. 403); Davis Mot. to Dismiss (Dkt. 420); Mitchell Mot. to Dismiss (Dkt. 409); Perry Mot. to Dismiss

(Dkt. 410); Roberson Mot. to Dismiss (Dkt. 402); Simpkins Mot. to Dismiss (Dkt. 414).) As explained below and contrary to the Racketeering Defendants' assertion, the racketeering charge (Count One) at issue is predicated on acts that qualify as crimes of violence under the statute, and therefore their motions to dismiss Count Two are denied. *See United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009) ("Because racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity, we look to the predicate offenses to determine whether a crime of violence is charged.").

### A. Crimes of Violence Under Section 924(c)

Section 924(c) defines a "crime of violence" as a felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). In *United States v. Davis*, the Supreme Court held that Subsection B ("the Residual Clause") was unconstitutionally vague. 139 S. Ct. at 2336. As a result, a "crime of violence" under Section 924(c) must satisfy Subsection (A) such that the crime "has as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A) ("the Elements Clause").

The court applies the "categorical approach" to determine whether a charge satisfies the Elements Clause. *See United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 844 (2019) (applying the categorical approach to Hobbs Act robbery). The categorical approach "involves two steps: first [the court] identif[ies] the elements of the predicate conviction by determining the minimum criminal conduct a defendant must

commit to be convicted; second, [the court] determine[s] whether that minimum criminal conduct has as an element the use, attempted use, or threatened use of physical force." *United States v. Moore*, 916 F.3d 231, 240 (2d Cir. 2019).[3] Determining the minimal conduct necessary for conviction "requires more than the application of legal imagination to the statute's language." *Hill*, 890 F.3d at 56 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). "To show that a particular reading of the statute is realistic, a defendant must at least point to his own case or other cases in which the courts in fact did apply the statute in the manner for which he argues." *Id.*[4]

### B. Racketeering as a Crime of Violence

The racketeering statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). A "pattern of racketeering" requires "at least two acts of racketeering activity." *Id.* § 1961(5).

---

[3] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

[4] The "realistic probability" test does not apply where the plain language of a statute renders it a categorical mismatch. *See Hylton v. Sessions,* 897 F.3d 57, 63 (2d Cir. 2018); *Williams v. Barr*, 960 F.3d 68, 78 (2d Cir. 2020). If a statute fails a categorical analysis on its face, the court does not consider whether the statute might pass a categorical analysis based on how it is applied in practice. *See, e.g.*, *United States v. Fernandez-Taveras*, -- F. Supp. 3d --, 18-cr-455 (NGG), 2021 WL 66485, at *5 (E.D.N.Y. Jan. 7, 2021).

"Because racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity, we look to the predicate offenses to determine whether a crime of violence is charged." *Ivezaj*, 568 F.3d at 96. Racketeering therefore qualifies as a crime of violence when the Government proves "(1) the commission of at least two acts of racketeering and (2) at least two of those acts qualify as 'crimes of violence' under § 924(c)." *Id.*

The racketeering charge in Count One is premised on fourteen alleged racketeering acts. The Government charges each Racketeering Defendant with at least three racketeering acts. At least two of the racketeering acts charged against each Racketeering Defendant are Hobbs Act robbery, attempted Hobbs Act robbery, and/or state law robbery. Each of those predicate racketeering acts qualifies as a crime of violence. *See Hill*, 890 F.3d at 53, 60 (holding that Hobbs Act robbery is categorically a crime of violence); *United States v. Pereira-Gomez*, 903 F.3d 155, 166 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1600 (2019) (holding that state law robbery under N.Y. Penal Law § 160.00 qualifies as a crime of violence under the Sentencing Guidelines); *McCoy*, 995 F.3d at 55 (holding that attempted Hobbs Act robbery is categorically a crime of violence). Accordingly, Count Two of the Second Superseding Indictment is properly predicated on a crime of violence and the Racketeering Defendants' motions to dismiss are denied.

### III. DEFENDANTS' MOTIONS TO DISMISS FIREARM-RELATED COUNTS PREDICATED ON ATTEMPTED HOBBS ACT ROBBERY CHARGES

Defendants charged in Counts Nine, Fourteen, Seventeen, and Twenty of the Second Superseding Indictment move to dismiss those counts, which charge them with unlawful use of firearms in furtherance of attempted Hobbs Act robbery in violation of

Section 924(c).[5] (Cheese Mot. to Dismiss (Dkt. 408); Davis Mot. to Dismiss; Mitchell Mot. to Dismiss; Perry Mot. to Dismiss; Raymond Mot. to Dismiss; Roberson Mot. to Dismiss; Simpkins Mot. to Dismiss.) Because attempted Hobbs Act robbery qualifies as a crime of violence for Section 924(c) liability, the court denies Defendants' motions. *See McCoy*, 995 F.3d at 57.

In *McCoy*, the Second Circuit held that attempted Hobbs Act robbery satisfies the Elements Clause of Section 924(c). *Id.* at 55. Applying the categorical approach, the Second Circuit reasoned that:

> for substantive crimes of violence that include the use of physical force as an element, defendants also commit crimes of violence when commission of those crimes is attempted--because such attempts necessarily require (a) an intent to complete the substantive crime (including an intent to use physical force) and (b) a substantial step towards completing the crime (which logically means a substantial step towards completion of all of that crime's elements, including the use of physical force).

*Id.* The Second Circuit stated that, "[b]ecause [the court] held in *Hill* that Hobbs Act robbery categorically constitutes a crime of violence, it follows as a matter of logic that an attempt to commit Hobbs Act robbery—which the statute also expressly prohibits, *see* 18 U.S.C. § 1951(a)—categorically qualifies as a crime of violence." *Id.* (citing *Hill*, 890 F.3d at 53).

---

[5] Counts Nine, Fourteen, Seventeen, and Twenty in the Second Superseding Indictment were previously alleged as Counts Eight, Ten, Twelve, and Fourteen in the First Superseding Indictment. For purposes of clarity, in light of the Second Circuit's vacatur and remand of the court's dismissal of those counts from the First Superseding Indictment, this Memorandum & Order resolves the pending motions to dismiss all firearm-related charges by reference to the relevant counts from the Second Superseding Indictment.

Accordingly, the court holds that Counts Nine, Fourteen, Seventeen, and Twenty of the Second Indictment are properly predicated on crimes of violence, and Defendants' motions to dismiss those counts are denied.[6]

## IV. DEFENDANTS' MOTIONS TO DISMISS COUNTS FOR COMMITTING PHYSICAL VIOLENCE IN FURTHERANCE OF A PLAN TO COMMIT HOBBS ACT ROBBERY

Defendants Cheese, Darby, Davis, Mitchell, Perry, Raymond, Roberson, and Simpkins move to dismiss Counts Eight, Thirteen, Sixteen, and Nineteen for committing physical violence in furtherance of a plan to commit robbery under the Hobbs Act, 18 U.S.C. § 1951(a). (Cheese Mot. to Dismiss; Darby Mot. to Dismiss; Davis Mot. to Dismiss; Mitchell Mot. to Dismiss; Perry Mot. to Dismiss; Raymond Mot. to Dismiss; Roberson Mot. to Dismiss; Simpkins Mot. to Dismiss.) They argue that the charges are barred by the Double Jeopardy Clause of the Fifth Amendment; that they are not sufficiently pleaded; and that they violate core principles of due process. (*Id.*) For the reasons stated below, Defendants' motions are granted on the grounds that the indictment is improperly multiplicitous in violation of the Double Jeopardy Clause.[7] Because the court decides the issue on Double Jeopardy grounds, it is not necessary to address Defendants' alternative arguments for dismissal.

---

[6] Because the court finds that the Section 924(c) charges are properly predicated on attempted Hobbs Act robbery, it does not need to reach Defendants' argument that those charges should be dismissed because they could not be predicated on the counts for committing physical violence in furtherance of a plan to commit Hobbs Act robbery. (*See, e.g.*, Mitchell Mot. to Dismiss at 6.)

[7] Defendants Barnaby and Grant did not move to dismiss these counts. The court dismisses the relevant charges against them *sua sponte* on the same grounds.

### A. Applicable Law

#### 1.    Double Jeopardy and the *Blockburger* Test

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Clause "assur[es] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977). Under the Double Jeopardy Clause, "[a]n indictment is multiplicitous if it charges the same crime in two counts." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004). "[T]he critical double jeopardy inquiry is not factual, i.e., whether the same conduct is at issue in charges brought under different statutes, but legal, i.e., whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." *United States v. Basciano*, 599 F.3d 184, 198 (2d Cir. 2010). The potential harm of a multiplicitous indictment is that it may "create[] an exaggerated impression of a defendant's criminal activity by charging 'an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed.'" *United States v. Polizzi*, 257 F.R.D. 33, 36 (E.D.N.Y. 2009) (quoting *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).)

Courts apply the same-elements test established in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether charges are unlawfully multiplicitous. *See Basciano*, 599 F.3d at 196-97. "The *Blockburger* inquiry asks whether each offense contains an element not contained in the other, and provides that, if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution." *Id*. "If each section requires proof of at least one fact that the other does not, there are two offenses, and it is presumed that the legislature intended to authorize prosecution and punishment under both. In that circumstance, the imposition of multiple punishments does

11

not violate the Double Jeopardy Clause." *United States v. Weingarten*, 713 F.3d 704, 708 (2d Cir. 2013).

In *United States v. Weingarten*, for example, the Second Circuit applied the *Blockburger* test to determine whether convictions for "transport[ing] [a minor] in interstate or foreign commerce . . . with intent that the [minor] engage in . . . [criminal] sexual activity" under 18 U.S.C. § 2423(a) and for "travel[ing] in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person" under 18 U.S.C. § 2423(b) violated the Double Jeopardy Clause. 713 F.3d 704 (2d Cir. 2013). Defendant argued, unsuccessfully, that "transporting" a minor necessarily required "traveling with" that minor, such that the first conviction was a lesser included offense of the second. In upholding both convictions, the court reasoned that the defendant's definition of "transporting" was unduly narrow, given that someone could "transport" a minor by doing so through an agent without physically accompanying the minor and could "travel with" a minor without being the person who was "transporting" the minor. *Id.* at 708-09. The court concluded that the two crimes each included an element that the other did not because the first required proof of "transporting" a minor, which the second conviction did not require, and the second required proof of "traveling with" a minor, which the first conviction did not require. *Id.*

2.   The Elements of the Charged Hobbs Act Crimes

The Hobbs Act provides that:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, *or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section* shall be fined under this title or imprisoned not more than twenty years, or both.

12

18 U.S.C. § 1951(a) (emphasis added).

In *Scheidler v. Nat'l Org. for Women, Inc.*, the Supreme Court held that the "commit[ting] or threaten[ing] physical violence" clause of the Hobbs Act does not create a "freestanding physical violence offense." 547 U.S. 9, 23 (2006) ("*NOW III*") ("Congress did not intend to create a freestanding physical violence offense in the Hobbs Act. It did intend to forbid acts or threats of physical violence in furtherance of a plan or purpose to engage in . . . robbery or extortion (and related attempts and conspiracies)."). Accordingly, the Hobbs Act is divided into two independent crimes: (1) Hobbs Act robbery and (2) Hobbs Act extortion. *See United States v. Walker*, 314 F. Supp. 3d 400, 409 (E.D.N.Y. 2018).

The crimes of Hobbs Act robbery and Hobbs Act extortion are indivisible. *Walker*, 314 F. Supp. 3d at 413. A defendant may be convicted of attempt or conspiracy to commit Hobbs Act robbery or extortion, but "cannot be convicted of both attempt and a substantive offense, let alone punished for both." *United States v. Bicaksiz*, 194 F.3d 390, 395 n.7 (2d Cir. 1999). "If a defendant cannot be convicted for both Hobbs Act extortion and attempted extortion, then it must logically follow that the same prohibition applies when a defendant is convicted of violence in furtherance of Hobbs Act extortion and attempted extortion." *United States v. Yuan Li*, No. 18-cr-302 (BMC), 2020 WL 6393038, at *8 (E.D.N.Y. Nov. 2, 2020). A Hobbs Act crime "may be committed through multiple alternative means, robbery or violence in furtherance of a plan to commit robbery, but always as part of a single element." *Walker*, 314 F. Supp. 3d at 409. Under the *Blockburger* test, a charge for violence in furtherance of robbery is multiplicitous of a robbery charge because "violence in furtherance of Hobbs Act Robbery necessarily requires proof of the same elements as Hobbs Act Robbery." *Id.*

13

In *Walker*, Judge Weinstein considered whether one count, which charged Hobbs Act robbery, was multiplicitous with another count, which charged the commission of violence in furtherance of Hobbs Act robbery. After identifying the elements of each charged crime, the court observed that the only distinction between the two was "the *in furtherance of a robbery* clause" in the second count. *Id.* at 413 (emphasis in original). Because "[t]he act of taking property through physical force in [the Hobbs Act robbery count] encapsulates the use of force in furtherance of a robbery in [commission of violence in furtherance of Hobbs Act robbery count]," the court concluded that the counts were multiplicitous, and explained that:

> Charging both counts violated double jeopardy. Hobbs Act Robbery is indivisible. A defendant may be convicted under the statute for robbery or violence in furtherance of robbery, but not both. These are different means not separate elements. Congress did not intend for a single criminal act to give rise to separate units of prosecution.

*Walker*, 314 F. Supp. 3d at 413.

Notably, Judge Weinstein's approach in *Walker* is consistent with the comments to the Model Federal Jury Instructions on the Hobbs Act:

> The Hobbs Act, 18 U.S.C. § 1951, seems on its face to describe three separate offenses: (1) robbery; (2) extortion; and (3) committing or threatening physical violence in furtherance of a plan or purpose to violate section 1951. However, in *National Organization for Women, Inc. v. Scheidler* (Scheidler III), the Supreme Court held that the third putative offense does not "create a freestanding physical violence offense," but rather must be read restrictively to proscribe only the commission or threat of violence in furtherance of a plan to commit robbery or extortion. Thus, it

14

seems that [the violence in furtherance clause is] only appli-
cable when the defendant planned to commit robbery or
extortion, but instead committed or threatened some act of
violence not amounting to an attempted robbery or extor-
tion, a small subset of cases that will rarely be charged.

3–50 Sand's Modern Federal Jury Instructions–Criminal P 50.01
(2017). Both *Walker* and the model instructions are consistent
with *NOW III*'s clear statement that "Congress did not intend to
create a freestanding physical violence offense in the Hobbs Act."
*NOW III*, 547 U.S. at 23.

### 3.    Pretrial Dismissal of Multiplicitous Counts

The decision of whether to dismiss multiplicitous counts prior to
trial "is a matter for trial court discretion, and is most appropriate
when the mere making of the charges would prejudice the de-
fendant with the jury." *United States v. Reed*, 639 F.2d 896, 905
n.6 (2d Cir. 1981); *see also Polizzi*, 257 F.R.D. at 36. Where the
risk of prejudice is minor, the decision may be reserved, as the
Double Jeopardy problem will be moot if the jury does not return
multiplicitous verdicts or, if it does, then the court may resolve
the problem at the punishment stage. *See Ball v. United States*,
470 U.S. 856, 859 (1985) ("[T]he Government [has] broad dis-
cretion to conduct criminal prosecutions, including its power to
select the charges to be brought in a particular case."); *see also
United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006) ("If
the jury convicts on more than one multiplicitous count, the de-
fendant's right not to suffer multiple punishments for the same
offense will be protected by having the court enter judgment on
only one of the multiplicitous counts [or by] . . . vacat[ing] the
conviction on all but one."). Nonetheless, "[i]f an indictment is
multiplicitous on its face, then the multiplicitous count(s) should
be dismissed pre-trial." *United States v. Miller*, 26 F. Supp. 2d 415,
422 (N.D.N.Y. 1998); *see also Polizzi*, 257 F.R.D. at 36-37 ("Dis-
trict courts presented with what are recognized before or during

trial to be multiplicitous indictments will avoid any problem by requiring the prosecution to elect between counts charged rather than by merging the counts at sentencing.")

## B.  Discussion

Defendants argue that the Section 1951(a) charges for committing physical violence in furtherance of attempted robbery in Counts Eight, Thirteen, Sixteen, and Nineteen must be dismissed because they are multiplicitous with the Section 1951(a) attempted robbery charges in Counts Seven, Twelve, Fifteen and Eighteen. (*See, e.g.*, Cheese Br. at 9.) Defendants are also charged with firearm-related counts predicated on each of those pairs of Section 1951(a) charges. (*See* Second Superseding Indictment ¶¶ 45, 50, 53, 56.) Defendants contend that the Section 1951(a) counts fail the *Blockburger* test because the elements of the attempted robbery charges entirely subsume the elements of the committing physical violence charges. (*See* Cheese Br. at 9 ("[T]he Government's charging theory here violates Double Jeopardy because committing physical violence in furtherance of a plan to commit Hobbs Act robbery would always be a substantial step in furtherance of Hobbs Act robbery—that is, it would always amount to an attempt.").) The Government responds that the motions should be denied because the challenged counts charge defendants with separate crimes and that, even if the indictment is multiplicitous, the court should reserve decision or deny the motions as premature. (*See* Gov't Opp. (Dkt. 427) at 24-28.)

The Government alleges that the charged defendants participated in attempted violent robberies on September 29, October 11, October 16, and November 14, 2017. For each of those four attempted robberies, the Second Superseding Indictment charges defendants with two Hobbs Act counts in violation of Section 1951(a) (attempted Hobbs Act robbery and committing

16

physical violence in furtherance of a plan to commit Hobbs Act robbery) and one firearm-related count:

- The September 29, 2017 attempted robbery of a narcotics trafficking business in Elmont, New York: Defendants Barnaby, Darby, Grant, Raymond, Roberson, and Simpkins are charged with Count Seven (attempted Hobbs Act robbery in violation of Section 1951(a)); Count Eight (committing physical violence in furtherance of a plan to commit Hobbs Act robbery in violation of Section 1951(a)); and Count Nine (unlawful use of firearms in furtherance of Counts Seven and Eight);

- The October 11, 2017 attempted robbery of a jewelry business in Queens, New York: Defendants Roberson and Simpkins are charged with Count Twelve (attempted Hobbs Act robbery in violation of Section 1951(a)); Count Thirteen (committing physical violence in furtherance of a plan to commit Hobbs Act robbery in violation of Section 1951(a)); and Count Fourteen (unlawful use of firearms in furtherance of Counts Twelve and Thirteen);

- The October 16, 2017 attempted robbery of a narcotics-trafficking business in Port Washington, New York: Defendants Barnaby, Cheese, Davis, Roberson, and Simpkins are charged with Count Fifteen (attempted

17

Hobbs Act robbery in violation of Section 1951(a)); Count Sixteen (committing physical violence in furtherance of a plan to commit Hobbs Act robbery in violation of Section 1951(a)); and Count Seventeen (unlawful use of a fire-arm in furtherance of Counts Fifteen and Sixteen);

- The November 14, 2017 attempted robbery of an auto-body shop in Flushing, New York: Defendants Davis, Mitchell, Perry, Roberson, and Simpkins are charged with Count Eighteen (attempted Hobbs Act robbery in viola-tion of Section 1951(a)); Count Nineteen (committing physical violence in furtherance of a plan to commit Hobbs Act robbery in violation of Section 1951(a)); and Count Twenty (unlawful use of a firearm in furtherance of Counts Eighteen and Nineteen).

Defendants assert that the elements of attempted Hobbs Act rob-bery are:

   i.    Knowingly

   ii.    Attempting (i.e., taking a substantial step in furtherance of the attempted crime)

   iii.    To obstruct, delay, or affect by robbery

   iv.    The movement of any article in interstate commerce.

(Cheese Br. at 9.)

Defendants identify the elements of committing physical violence in furtherance of a plan to commit Hobbs Act robbery as:

    i.    Knowingly

    ii.    Committing or threatening physical violence against any person or property

    iii.    in furtherance of

    iv.    a plan to obstruct, delay, or affect by robbery

    v.    the movement of any article in interstate commerce.

(*Id.*) Based on the above breakdown of the charges, Defendants contend that elements (ii) and (iii) of committing physical violence would always satisfy element (ii) of attempted Hobbs Act robbery (the "substantial step" element). *See United States v. Martinez*, 775 F.2d 31, 35 (2d Cir. 1985) ("[A] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime.") Accordingly, Defendants argue that proving a charge of committing physical violence under the Hobbs Act does not "require proof of an additional fact" that is not required to prove attempted Hobbs Act robbery. (*See* Cheese Br. at 8, citing *Blockburger*, 284 U.S. at 304.)

The Government disagrees. (Gov't Opp. at 27-28.) Relying on dicta from *Nikolla*, 95 F.3d at 54, it argues that committing physical violence under the Hobbs Act creates a "separate basis of liability." (*Id.* at 22.) *Nikolla*, however, resolved the unrelated question of whether committing physical violence in furtherance of a Hobbs Act violation was categorically a crime of violence under the Elements Clause of Section 924(c), and held that it was. *Nikolla* did not address the multiplicity question currently before

the court, and therefore does not decide the question presented here.

The Government also cites *United States v. Dervishaj*, 787 Fed. App'x 12 (2d Cir. 2019), for the proposition that the court has previously upheld Hobbs Act convictions based on charges that are the same as the ones in the Second Superseding Indictment. In *Dervishaj*—a summary order without precedential effect—the Second Circuit declined to consider the merits of the defendant's challenge to his nine Hobbs Act convictions on the grounds that he did not raise the argument at trial. *See Dervishaj*, 787 Fed. App'x at 15. There is no dispute about waiver in this case, given that Defendants have filed timely pre-trial motions in the district court. Accordingly, *Dervishaj* does not offer guidance on whether the Hobbs Act charges in this case are multiplicitous.

The Government alternatively contends that, even if a risk of a multiplicitous verdict exists, it would be premature to dismiss the multiplicitous charges at this stage in the prosecution. (Gov't Opp. at 28.) The Government relies primarily on *Josephberg*, where defendants were charged with obstructing the administration of tax laws and with tax evasion, among other charges. *See Josephberg*, 459 F.3d at 352. The district court dismissed one of those counts from the indictment as multiplicitous, but the Second Circuit reversed, holding that the dismissal was premature. *Id.* at 355 (quoting *Ball*, 470 U.S. at 860) ("there is no bar to the Government's proceeding with prosecution simultaneously *under the two statutes*.") (emphasis added).

*Josephberg* does not compel the result that the Government seeks. Unlike in *Josephberg*, Defendants here are charged with two alternative methods of committing one indivisible crime, which is prohibited under a single section of the criminal code, rather than by two separate statutes. *See Walker*, 314 F. Supp. 3d at 413 (dismissing charges for violence in furtherance of Hobbs Act robbery as multiplicitous of Hobbs Act robbery charges based

on the indivisibility of the crime); *see also NOW III*, 547 U.S. at 23 (holding that there is no "freestanding physical violence offense in the Hobbs Act"). Where, as here, the indictment charges defendants with violating the same statutory section in multiplicitous counts, the court may dismiss the multiplicitous charges prior to trial. *See Reed*, 639 F.2d at 905 n.6 (deeming whether to dismiss multiplicitous counts "a matter of trial court discretion").

Dismissing the multiplicitous counts at this stage is appropriate to avoid "creat[ing] an exaggerated impression" of Defendants' alleged criminal activity before the jury. *Polizzi*, 257 F.R.D. at 36. The Government added the multiplicitous Section 1951(a) Hobbs Act charges after this court dismissed Section 924(c) charges that were predicated on attempted Hobbs Act robbery, quite likely to ensure that the defendants were charged with a valid predicate for the dismissed Section 924(c) charges. *See Nikolla*, 950 F.3d at 52 (holding that committing physical violence under Section 1951(a) is categorically a crime of violence for purposes of Section 924(c) liability). After the Second Circuit's *Cheese* decision, the Government's Section 924(c) charges are validly predicated on the counts of attempted Hobbs Act robbery without resort to the multiplicitous counts. Meanwhile, maintaining the multiplicitous counts risks unnecessarily overcharging Defendants before the jury, and the court declines to do so here. *See Polizzi*, 257 F.R.D. at 36.

Because the Government has charged defendants with committing two alternate means of violating a single criminal prohibition, and because dismissal at this pretrial stage is within the court's discretion under the circumstances, the counts for committing physical violence in furtherance of a plan to commit Hobbs Act robbery are dismissed.

## V.  MOTIONS TO SEVER

Defendants Darby, Davis, Elias, Raymond, Thompson, and Woods move to sever their trials for efficiency purposes or to avoid the risk of spillover prejudice from racketeering-related charges to the defendants who were not charged with racketeering. The Government contends that joint trial of all defendants is necessary to efficiently try the issues and that the risk of prejudice will be resolved by instructing the jury not to consider racketeering evidence against non-racketeering defendants.

Separately, Defendants Cheese, Darby, Davis, Henderson, Roberson, Simpkins, and Woods move to sever their trial from that of co-defendant Latiff Thompson. They argue that, because they expect that the Government will seek to introduce Thompson's post-arrest statements and that Thompson will not testify, failure to sever their trials would violate the Confrontation Clause of the Sixth Amendment. The Government disagrees and asserts that any potential Confrontation Clause problem could be solved by redacting or omitting references to the moving Defendants' names from Thompson's statements. (Gov't Opp. at 40.)

The severance motions are premature. Accordingly, the motions are DENIED with leave to renew prior to trial.

## VI.  MOTIONS TO SUPPRESS AND DISMISS

### A.  Suppression of Evidence Identified in Automobile Search and Motion to Dismiss Count Four

Defendants Henderson, Thompson, and Woods move to suppress evidence from the September 7 traffic stop during which police searched Elias's car and identified a firearm and other items, on the grounds that the search violated the Fourth Amendment. (Henderson Mot. (Dkt. 411); Thompson Mot. (Dkt. 416); Woods Mot. (Dkt. 404).) Relatedly, Defendant Elias moves to dismiss Count Four of the Second Superseding Indictment on the

grounds that the Government cannot show a Section 924(c) violation based on evidence obtained in violation of the Fourth Amendment. (Elias Mot. (Dkt. 419) at 2.) The Government submits that it intends to rely on testimonial evidence for Count Four and does not intend to seek to introduce evidence of the firearm. (Gov't Opp. at 64). Accordingly, Elias's motion to dismiss is denied, and Henderson's, Thompson's, and Woods's motions to suppress the firearm are denied as moot.

### B. Suppression of Defendant Thompson's July 16, 2019 Post-Indictment Statements

Defendant Thompson moves to suppress post-arrest statements made outside the presence of counsel during a post-indictment interview. (Thompson Mot. at 14–17.) In its opposition, the Government argues that the statements should not be suppressed because Thompson knowingly and voluntarily waived his right to counsel. (Gov't Opp. at 35–38.) For the reasons stated below, Thompson's motion is denied.

#### 1. Applicable Law

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The right to counsel attaches "at or after the time judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Fellers v. United States*, 540 U.S. 519, 523 (2004); *see also United States v. Rommy*, 506 F.3d 108, 135 (2d Cir. 2007). "Once the right has attached, the Sixth Amendment renders inadmissible in the Government's case-in-chief statements elicited by the Government outside the presence of a defendant's counsel that are not accompanied by a waiver of this right." *United States v. Yousef*, 327 F.3d 56, 140 (2d Cir. 2003). The Government may procure a valid waiver from a represented defendant when conducting an interview outside of the presence of counsel unless the defendant has previously

made a "clear assertion of the right to counsel." *Montejo v. Louisiana*, 556 U.S. 778 (2009).

To be valid, a waiver must reflect "an intentional relinquishment or abandonment of a known right or privilege." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988). The Government bears the burden to show, by a preponderance of the evidence, "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and all of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (per curiam); *see also Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004). "While all custodial interrogations inherently involve serious pressures, in determining the voluntariness of petitioner's post-Miranda confessions, we must examine the totality of the circumstances . . . [s]pecifically . . . 1) the accused's characteristics, 2) the conditions of the interrogation, and 3) the conduct of the police." *Parsad v. Greiner*, 337 F.3d 175, 183 (2d Cir. 2003). "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Montejo*, 556 U.S. at 786. "[C]ourts indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387, 404 (1977).

2.   Discussion

Thompson was provided counsel during his initial interview with United States Pre-Trial Services, following his July 16, 2019 arrest. (Thompson Mot. at 11.) Within the next hour, he was taken to another room and questioned by federal law enforcement agents, without notice to or assistance of counsel, where he provided a videotaped statement. (*Id.*) Thompson contends that, although he was instructed on his *Miranda* rights, he did not voluntarily, knowingly, or intentionally waive them. (*Id.* at 11-12.) He asserts that he was confused by the abrupt move from the Pre-

24

Trial Services interview, where his lawyer was present, to an interview with federal agents in a different room equipped with a video camera in the absence of counsel. (*Id.* at 16.) He asserts that he was further confused because the agents told him that a lawyer would be appointed if he wanted one, without mentioning the lawyer he spoke to before, which indicated to him that the lawyer he spoke with before did not represent him. (*Id.* at 17.) Although he concedes that he signed the waiver form provided by the agents in the second interview, he contends that the signed form did not validly constitute a waiver of his rights due to his confusion about the situation.

The Government argues that the videotaped statements demonstrate that Thompson's waiver was voluntary, knowing, and intentional. (Gov't Opp. at 35.) According to those statements, the agents first advised Thompson that they were going to "run through [his] rights," and asked, "Have these guys already done that with you this morning?" (*Id.*) Thompson replied: "No but I knew that was going to come so . . . . You can have an attorney present and all that." (*Id.*) The agent responded: "We are going to go through . . . it with you. If you have any questions just ask us." (*Id.*) After Thompson agreed verbally, the agent stated: "You have the right to have a lawyer with you during the questioning . . . If you can't afford an attorney, one will be appointed to you before any questioning if you wish . . . If you decide to answer questions now without a lawyer present you have the right to stop answering at any time. Do you understand all of them?" (*Id.* at 35-36.) Thompson answered in the affirmative. (*Id.* at 36.) The Government also asserts that Thompson received, initialed, and signed an Advice of Rights form. (*Id.* at 37.)

The Government has met its burden of showing that Thompson waived his Sixth Amendment right to counsel. The colloquy between Thompson and the authorities during the FBI interview demonstrates that Thompson was advised of his rights and that

he acknowledged verbally and in writing that he understood those rights. *See United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011) (finding enforceable a waiver where defendant "did ultimately sign an express 'waiver-of-rights' form before making the inculpatory statements in question" and stating, "[t]hat fact, alone, is enough to strongly support the finding that [defendant], who could read and write and expressed his familiarity with his rights, knowingly and freely waived those rights before speaking.") As in *Plugh*, Thompson demonstrated familiarity with his right to counsel and executed the waiver form. *Id.* And there are no suggestions in the recording or allegations in Thompson's brief that he was subject to threatening or coercive conduct. *See id.* at 128 (crediting the lack of evidence of coercion, physical or psychological abuse, or promises made to induce waiver). Thompson asserts that he was confused after being relocated, but confusion about the circumstances, alone, does not rebut the Government's showing that the waiver was valid. *Cf. United States v. Murphy*, 703 F.3d 182, 193 (2d Cir. 2012) (holding waiver was not valid where the authorities instructed the defendant on his *Miranda* rights incorrectly). Accordingly, Thompson's motion to suppress the post-arrest statements is denied.

### C.   Suppression of Phone Location Data

Defendants Darby and Davis move to dismiss phone location data resulting from search warrants that the Government obtained on March 8, 2018 and September 21, 2018. (Darby Mot. (Dkt. 403) at 12-20; Davis Mot. (Dkt. 420) at 3.) Darby and Davis argue that the March 8 warrant lacked probable cause and that the September 21 warrant both lacked probable cause and was issued based on misleading information. (*Id.*) Defendants also argue that the "good faith" exception to probable cause does not apply. (*See* Darby Mot. at 20.)

1.  Applicable Law

A search warrant may be issued upon a showing of probable cause that (1) a crime was committed and (2) evidence of that crime is located in the premises to be searched.[8] *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). "In considering the quantum of certainty required, it is only a probability, and not a prima facie showing of criminal activity, that is the standard of probable cause." *Id.* at 346. Under *Illinois v. Gates*, the court applies a "totality of the circumstances" test to evaluate whether there was probable cause to issue the warrant, including where the warrant was issued based on information provided by an informant. 462 U.S. 213, 241-44 (1983). The result turns on whether the judicial officer who issued the warrant "ma[d]e a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238; *see also United States v. Grubbs*, 547 U.S. 90, 95 (2006) (Probable cause exists if, based on the totality of the circumstances set out in the affidavit, "there is a fair probability that contraband or evidence

---

[8] Under *Carpenter v. United States*, the Government must obtain a search warrant to acquire cell-site data. 138 S. Ct. 2206, 2221 (2018). Because one of the two challenged warrants was procured before *Carpenter* was decided, the Government contends that, by obtaining the March 2018 warrant, it did more than it was required to under the law as it existed then. (Gov't Br. at 57; *see also United States v. Canada*, No. 17-3283, 2021 WL 2394416, at *3 (2d Cir. June 11, 2021) ("The Court has declined to exclude cell site evidence when a search of records was made without a warrant pre-Carpenter where the cell site information was obtained through a subpoena issued in conformity with the Stored Communications Act."). Because the court determines that the warrants were supported by probable cause, it is not necessary to consider whether the March 2018 warrant was necessary.

of a crime will be found in a particular place."). The court reviews a search warrant from a magistrate judge "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed" and resolves doubts "in favor of upholding the warrant." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993).

If the reviewing court concludes that the warrant was not based on probable cause, the evidence may still be admissible under the "good faith" exception, which applies when the officers who executed the warrant acted in good faith reliance on its validity. *United States v. Leon*, 468 U.S. 897, 922 (1984). However, suppression "remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923.

### 2. Discussion

Darby and Davis move to suppress phone location data resulting from the March 8, 2018 warrant (18-mc-725) on the grounds that the warrant lacked probable cause. (Darby Br. at 13.) Darby also moves to suppress phone location data resulting from the September 21, 2018 warrant (18-mc-2534) for lack of probable cause and because it was issued based on misleading information. Each of the warrants was for phone records based on information provided by confidential witnesses. (Darby Br. at 13, 18.)

The March 8 warrant sought and obtained historical cell-site information for nine phone numbers. (Gov't Opp. at 51.) It was based on statements related to the September 29, 2017 robbery made by a confidential informant. (*Id.*) Darby asserts that the informant's affidavit did not suggest a connection between his number and any phone number listed in the witness's contact list. (Darby Br. at 15-16.) Darby also asserts that the affidavit is not representative of all contact between those two numbers because

it only includes one 19 second call from the day before the alleged robbery and fails to address 20 other calls between the two numbers. (*Id.*)

The September 21 warrant, seeking data from Sprint, was based on an affidavit from a confidential witness related to the September 7, 2017 robbery. (Darby Br. at 17-18.) The affidavit for the warrant attributes a phone number listed under another name to Darby and asserts that the number was in contact with co-conspirators before and after the date of the alleged robbery. (Darby Br. at 18-19.)

Darby argues that this information is misleading and that the good faith exception is inapplicable because the statements of the confidential informant lack sufficient corroboration. (Darby Mot. at 20.) He relies on *Leon*, 468 U.S. at 922, where the Supreme Court held that the good faith exception does not apply where the "affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or a warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." He also cites *United States v. Weaver*, 99 F.3d 1372, 1381 (6th Cir. 1996), where the court declined to apply the good faith exception where "a reasonably prudent officer would have sought greater corroboration to show probable cause."

The Government responds that both warrants were based on sufficient information, including corroborating information, to support probable cause. (Gov't Opp. at 51-55.) Specifically, the Government points to details provided by the informant for each warrant identifying co-defendants, the victim, the weapon used, and other facts related to the alleged robberies. (*Id.*) In response to Darby's arguments concerning the September 21 warrant, the Government argues that the affidavit demonstrated probable cause that there was contact between Darby and co-defendants

29

during the month in which the robbery allegedly occurred. (*Id.* at 55-56.)

The Government further contends that, even if the warrants were invalid, the agents had a good faith basis to believe the warrants were lawful because they "set forth probable cause that serious robbery offenses had been committed, the identity of the perpetrators, and gave a clear basis for the phone numbers use[d] by the perpetrators at the time the offenses were committed." (Gov't Opp. at 56-57.)

The Government's identification of corroborating information is sufficient to support probable cause for each of the warrants. Because probable cause exists, the question of whether the good faith exception applies is moot. Accordingly, Defendants' motions to suppress are denied.

### D. Suppression of Photo Identification and Motion for a *Wade* Hearing

Darby moves to suppress a photo array identification by the victim of the September 29, 2017 attempted robbery, where the victim was allegedly tortured with a knife. (Darby Mot. at 21-27; Gov't Opp. at 57-58.) He argues that an in-court identification should not be allowed as a cure for the defective photo array because the in-court identification would be "unduly suggestive." (Darby Br. at 22.) Darby requests an evidentiary hearing under *United States v. Wade*, 388 U.S. 218 (1967).

#### 1. Applicable Law

"A prior identification will be excluded only if the procedure that produced the identification is so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." *United States v. Salameh*, 152 F.3d 88, 125 (2d Cir. 1998). "If pretrial procedures have been unduly suggestive, the court must determine whether an in-court identification will be the product of the suggestive procedures or

whether instead it is independently reliable." *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992). "[U]se of a photo array is not inherently suggestive, and its mere use will not prevent admission of the pre-trial identification or an in-court identification by the witness." *United States v. Levy*, No. 04-cr-559 (NGG), 2005 WL 2179650, at *2 (E.D.N.Y. Sept. 9, 2005) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)). "If there is nothing inherently prejudicial about the presentation, such as the use of a very small number of photographs or of suggestive comments, the principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990).

A court may hold a *Wade* hearing to "examine police procedures surrounding an out-of-court identification of the defendant for a taint of suggestiveness." *Lynn v. Bliden*, 443 F.3d 238, 249 (2d Cir. 2006), *as amended* (May 19, 2006); *see also United States v. Brown*, No. 14-cr-509 (NSR), 2017 WL 825314, at *1 (S.D.N.Y. Mar. 2, 2017); ("To merit a *Wade* hearing, a defendant must "allege facts supporting his contention that the identification procedures used were impermissibly suggestive.").

### 2. Discussion

Darby contends that the photo array should be suppressed because the Government's discovery fails to show its propriety and because of discrepancies between the victim's description of the perpetrator and his own characteristics. (Darby Br. at 23-24.) Specifically, Darby asserts that contemporaneous forms produced by the Government from the photo array omit necessary information, including a description of the information provided to the victim. (*Id.*) Darby also contends that the victim's description of the perpetrator as an unmasked Black male who was light skinned, 20 years old, 5'8", and 160 pounds is an inadequate

identification, as Darby was 28 years old, six feet tall, and weighed 160 pounds at the time of the robbery attempt. (*Id.* at 22-23.) Darby contends that an in-court identification would be under the "most suggestive circumstances in which it is obvious where the defendant is seated in the courtroom" and should not be allowed. (Darby Br. at 26.) The Government responds that the evidence should be admissible without a *Wade* hearing because Darby has not identified specific deficiencies in the identification procedures and because the victim's identification of him was sufficiently accurate. (Gov't Opp. at 62-63.)

Darby has not identified facts suggesting that the photo identification was improper or that the victim's description was sufficiently inaccurate to warrant an evidentiary hearing on this dispute. Accordingly, his motion to suppress or for a *Wade* hearing is denied.

## VII. DISCOVERY AND DISCLOSURE MOTIONS

Defendants bring various motions seeking to compel discovery and disclosure of evidence, including under *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and the Jencks Act. They also seek to compel early 404(b) notice, production of a bill of particulars, and various other discovery items.

### A.  The Government's Ongoing *Brady* and *Giglio* Obligations

Defendants Darby, Henderson, and Woods seek orders directing disclosure of all exculpatory and impeachment material and identification of its relationship to any witnesses, potential witnesses, co-defendants, and unindicted co-conspirators under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). These motions include Darby's request for production of surveillance video footage that does not depict him at robbery locations charged in Counts Three, Seven,

and Ten. Henderson seeks to require the agents who participated in the investigation to be asked about all exculpatory information.

"The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001). That includes exculpatory evidence and evidence that may be used to impeach a key government witness. *See Giglio*, 405 U.S. at 154. The material must be disclosed "in time for its effective use at trial." *Coppa*, 267 F.3d at 144-46. The district court may order these disclosures at any time as a matter of "sound case management." *United States v. Taylor*, 17 F. Supp. 3d 162, 177 (E.D.N.Y. 2014), *aff'd*, 802 Fed. App'x 604 (2d Cir. 2020).

The Government's disclosure obligations are ongoing, and the court expects that it will continue to provide relevant and timely updates. Accordingly, these motions are denied as premature with leave to renew.

## B.    Rule 404(b) Notice

Defendants Elias, Davis, Henderson, and Woods move for an order requiring early disclosure of any evidence that the Government intends to offer at trial pursuant to Federal Rule of Evidence 404(b). Henderson also moves to preclude the Government from referencing "any other extraneous crimes, convictions, or misconduct by the defendant or other defense witnesses" during trial.

Rule 404(b)(3) requires that the Government "(A) provide reasonable notice of any [evidence of crimes, wrongs or acts] that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it; (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and (C)

do so in writing before trial – or in any form during trial if the court, for good cause, excuses lack of pretrial notice."

The Government argues that these motions are premature, and has agreed to provide 404(b) notice at least one month before trial. (Gov't Opp. at 68-69.) Accordingly, the motions are denied as premature with leave to renew.

### C.   Bill of Particulars

Defendant Woods seeks a bill of particulars identifying the robbery addresses, the identity of robbery victims and co-conspirators, and the manner in which he will be identified at trial as a participant. (Woods Mot. at 10.)

A bill of particulars is appropriate when it is necessary to supplement a vague indictment. *See United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004). The question is whether the information is necessary for the defendant to understand the charges against them. *See United States v. Gotti*, 784 F. Supp. 1017, 1019 (E.D.N.Y. 1992).

The Government argues that it has provided sufficient information in the indictment and that Woods' motion is an improper attempt to obtain specific details about the Government's theory in advance of trial.

Because the indictment is sufficiently detailed as to notify the defendants about the nature of the charges against them, the motion for a bill of particulars is denied.

### D.   Remaining Discovery Motions

Defendants also seek to compel certain discovery and to preclude certain references at trial, including disclosure of all rough notes and writings of law enforcement and Government lawyers; the identities of informants; early disclosure of information under the Jencks Act; and disclosure of the Government's exhibit list. These motions are denied as premature with leave to renew.

## VIII.   CONCLUSION

For the foregoing reasons, the motions to dismiss the firearm-related counts are DENIED; the motions to dismiss the charges for committing physical violence under the Hobbs Act are GRANTED; the motions to suppress are DENIED; the motion for a bill of particulars is DENIED; and decisions on the severance and discovery motions are DENIED as premature with leave to renew.

SO ORDERED.

Dated:    Brooklyn, New York
         July 8, 2021

                                    /s/ Nicholas G. Garaufis
                                   NICHOLAS G. GARAUFIS
                                   United States District Judge